UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

———

No. 1:25-cv-01356

———

**Lab Technology LLC,**
*Plaintiff,*

v.

**Greenlight Financial Technology, Inc.,**
*Defendant.*

———

## OPINION AND ORDER

Plaintiff alleges that defendant infringed one or more claims of U.S. Patent No. 9,219,982 ('982 Patent). Doc. 1 at 2. Defendant moved to dismiss plaintiff's original complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Doc. 12. In lieu of contesting that motion, plaintiff filed a first amended complaint, again alleging that defendant infringes one or more claims of the '982 Patent. Doc. 18 at 6.

Now, defendant again moves to dismiss plaintiff's amended complaint for failure to state a claim under Rule 12(b)(6). Doc. 30. Specifically, defendant argues that:

(1) due to prosecution disclaimer, the '982 Patent does not claim the allegedly infringing activity; and

(2) the '982 Patent is invalid under 35 U.S.C. § 101 for claiming patent-ineligible subject matter.

Doc. 31 at 7. Defendant's motion to dismiss is granted.

### I.  Background

Plaintiff seeks damages for defendant's alleged operation of a "Kids & Teen Banking App" that infringes claim 13 of the '982 Patent. Docs. 18 at 2, 8–9; 18-2 at 2.

#### A.  Technology

Titled "Apparatus and Method for Automatically Refreshing a Display of a Telephone," the '982 Patent discloses a "telephone

- 1 -

[that] automatically display[s] services that are likely to be used at a given time and/or in a given location." '982 Pat. at [54], col. 2 ll. 5–6.

"A typical telephone has a display panel and navigation keys to help a user to find and use a service." *Id.* col. 1 ll. 29–30. While not true in all embodiments, a "telephone" may be a "personal mobile phone." *Id.* col. 7 ll. 65–66. A service may include phone calls, text messaging, a directory, stock-market tracking, weather, banking, entertainment, shopping, and many other phone applications, or apps, that have become ubiquitous to modern life. *Id.* col. 1 ll. 20–28.

The telephone may also include a function selector with a processor. *Id.* col. 2 ll. 54–55. A function "represents a given set of conditions associated with the user . . . such as time, location, activity or the like." *Id.* ll. 19–22. The function selector selects the appropriate function from a datastore based on the user's location, the time of day, or some other static or variable condition. *See id.* ll. 19–22, 46–67. When said condition is location, the function selector "further connects to a location server." *Id.* l. 63. The disclosed datastore "may include a hard disk, a memory, a flash memory and/or a database or other suitable storage means." *Id.* col. 6 ll. 32–33. In any form, the datastore "includes at least one function" for the function selector to select. *Id.* l. 31.

As briefly described above, the '982 Patent discloses using communication services via the telephone. *Id.* col. 3 ll. 49–50. The communication services "are provided over a communication network." *Id.* ll. 51–52. Communication services include voice calls, voice messages, text messaging, directories, banking services, reminders, news, and emergency alerts. *Id.* col. 3 l. 53–col. 4 l. 2 ("It will be apparent to those having skill in the art a wide range of services can be considered communications services . . . in accordance with the teachings of the present invention."). The communication network may be a telephone network, a wired network, a WiFi network, or other suitable network. *See id.* col. 4 ll. 3–21.

A "function," as described by the '982 Patent, "is associated with one or more commonly used communication services . . . that would be used . . . under a given set of conditions." *Id.* col. 4 ll. 37–40. For example, the function "may represent a shopper's role at a shopping mall" if the function was based on location. *Id.* col. 5 ll. 3–4. In this instance, the communication services associated with the shopping-mall function "may include an event information service provided by the shopping mall, a shopping mall business directory service, or an instant coupon promotion service for a merchant at the shopping mall." *Id.* ll. 6–9.

To establish the location of the telephone, the function selector "connects to a location server" through the Internet, a cellular data network, a WiFi hotspot, Bluetooth, "a global location satellite network," or other appropriate means. *Id.* col. 6 l. 59–col. 7 l. 7.

Plaintiff alleges that defendant's banking app infringes at least Claim 13 (Docs. 18 at 6–8; 18-2 at 2), which covers:

> 13. A method of refreshing a display panel of a telephone,
>
> > comprising a display panel, a processor, and a datastore
> >
> > > comprising at least one function comprising information relating to a current location of the telephone and a user of the telephone,
> >
> > the telephone operable to connect to a communication network, wherein the at least one function is associated with at least one communication service, comprising the steps of
>
> [13.1] obtaining a current location of the telephone using a location server,
>
> [13.2] selecting a function from the datastore, and
>
> [13.3] refreshing a screen on the display panel to include the at least one communication service associated with the selected function based at least in part on the current location of the telephone.

'982 Pat. col. 9 ll. 5–16 (formatted for clarity).

- 3 -

As taught by the '982 Patent, claim 13 discloses a method of updating a telephone's display based on the location of the phone. The telephone's function selector connects to a "location server," establishing the location of the phone. The selected function is associated with at least one communication service (e.g., text, phone calls, banking service, or other apps). The telephone screen then displays the associated communication service(s). In short, the phone displays apps that the telephone-user commonly opens at the phone's identified location.

### B.  Prosecution history

The '982 Patent issued on December 22, 2015, from U.S. Patent Application No. 14/730,866. '982 Pat. at [21], [45]. Application No. 14/730,866 is a continuation of U.S. Patent Application No. 14/525,638 (issued as U.S. Patent No. 9,084,084), which is a continuation of U.S. Patent Application No. 11/472,613 (issued as U.S. Patent No. 8,903,067) filed on June 22, 2006. *Id.* at [63].

During prosecution of Application No. 11/472,613 (issued as U.S. Patent No. 8,903,067), the U.S. Patent Examiner rejected claims 1 and 11 as unpatentable under 35 U.S.C. § 103 over U.S. Patent Application No. 10/808,824 in view of U.S. Patent No. 6,983,313 ('313 Patent). Non-Final Rejection, U.S. Pat. Application No. 11/472,613, at 3 (filed June 28, 2011). The rejected claim 11, similar in language to Claim 13 in the '982 Patent, read:

11. A method for refreshing a screen on a display panel of a telephone, comprising

storing at least one function in a datastore, wherein the at least one function comprises information relating to a location of a user of the telephone and at least one other condition associated with a user of the telephone, wherein the at least one function is associated with at least one communication service;

displaying on the display panel a first screen containing communication information based on a first function, the first screen including at least one display item, each of at

- 4 -

least one display items representing a communication service associated with the first function;

connecting the telephone to *a location server* to obtain location information;

retrieving information relating to at least the location of the telephone;

comparing the retrieved information to the location in the datastore; and

refreshing the screen to include a display item representing at least one communication service associated with the function.

Claims, U.S. Pat. Application No. 11/472,613, at 3 (filed Aug. 31, 2010) (emphasis added) (cleaned up).

According to the examiner, U.S. Patent Application No. 10/808,824 disclosed all elements of rejected claim 1 and 11 except for "circuitry operable to connect the telephone to a location server to obtain location information." Non-Final Rejection, U.S. Pat. Application No. 11/472,613, at 4 (filed June 28, 2011). However, the examiner rejected claim 11 as obvious because the '313 Patent "does disclose circuitry operable to connect the telephone . . . to a location server . . . to obtain location information." *Id.*

In response, the patent applicant attempted to distinguish the '313 Patent through amendment and argument. According to the applicant, "the positioning information [disclosed] is determined by obtaining said positioning information (*i.e.*, the location of the telephone) from a location server, not from a positioning system (*e.g.*, global positioning system [GPS], triangulation technique) as is done in" the '313 Patent. Applicant Arguments/Remarks Made in an Amendment, U.S. Pat. Application No. 11/472,613, at 6 (filed Sep. 23, 2011); *see also* '982 Pat. col. 7 ll. 4–5 ("function selector . . . connects to location server . . . over a global location satellite network"). The applicant added that rejected claims 1 and 11 "do[] not depend on a positioning system in order to obtain the location of the phone." Applicant Arguments/Remarks Made

in an Amendment, U.S. Pat. Application No. 11/472,613, at 6 (filed Sep. 23, 2011).

The examiner disagreed with the applicant's argument and again rejected claims 1 and 11 as obvious in a final office action. Final rejection, U.S. Pat. Application No. 11/472,613, at 6–7 (filed Nov. 10, 2011). Notably, the examiner maintained that the '313 Patent disclosed "circuitry operable to connect the telephone . . . to a location server . . . to obtain a location of the telephone." *Id.* at 7. The examiner did not question or disagree with the applicant's representation that "location server," as disclosed in rejected claims 1 and 11, did not include a positioning system, such as GPS or triangulation techniques. *See id.*

After further administrative actions, the applicant overcame the examiner's rejection by amending claims 1 and 11 to include "connecting the telephone to a location server to obtain a <u>current</u> location," among other minor amendments. Claims, U.S. Pat. Application No. 11/472,613, at 2–3 (filed Feb. 7, 2012); *see also* 37 C.F.R. § 1.121(b)(1)(ii) (words underlined represent those added to the previous rejected claim). The applicant argued that the prior art did not disclose "a function using **current** location of a telephone," and would teach "a telephone in which a possible user location could be determined, but only for the purpose of providing a user location history." Applicant Arguments/Remarks Made in an Amendment, U.S. Pat. Application No. 11/472,613, at 7–8 (filed Apr. 8, 2014). The examiner relented and issued a notice of allowance. Notice of Allowance and Fees Due, U.S. Pat. Application No. 11/472,613 (filed Aug. 1, 2014); *see also* Issue Notification, U.S. Pat. Application No. 11/472,613 (filed Nov. 12, 2014) (issued as U.S. Patent No. 8,903,067, hereinafter '067 Patent).

The '982 Patent is a continuation of U.S. Patent No. 9,084,084, which is a continuation of the '067 Patent. '982 Pat. at [63]. All three of these patents were asserted in an unrelated case. Complaint, *Loc. Intel., LLC v. Samsung Elecs. Am., Inc.*, No. 2:17-cv-00716 (E.D. Tex. Oct. 27, 2017), Doc. 1. There, the plaintiff

and all defendants agreed that the court should construe "location server" as "A remote computer device or program that provides a telephone's current location obtained from a source other than a global positioning system or other triangulation technique positioning system." Joint Claim Construction & Prehearing Statement, *Loc. Intel.*, No. 2:17-cv-00716 (E.D. Tex. Sep. 6, 2018), Doc. 40 at 1. Considering the parties' agreement, the court suspended all claim construction deadlines and cancelled the *Markman* hearing. *Loc. Intel.*, No. 2:17-cv-00716, slip op. at 1 (E.D. Tex. Sep. 21, 2018).

Although that court did not expressly adopt the parties' claim construction, by cancelling the hearing and failing to issue a contradictory order, the court tacitly accepted the parties' construction. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc) ("In a case tried to a jury, the court has the . . . obligation to construe as a matter of law the meaning of language used in the patent claim."), *aff'd*, 517 U.S. 370 (1996). While in no way binding on this court, an agreed claim construction from a prior case is illuminating evidence of the proper construction. *See Amgen, Inc. v. F. Hoffmann-La Roche Ltd.*, 494 F. Supp. 2d 54, 70 n.1 (D. Mass. 2007); *see also Tex. Instruments, Inc. v. Linear Techs. Corp.*, 182 F. Supp. 2d 580, 589–90 (E.D. Tex. 2002) (noting the potential "due process" concerns of giving a prior claim construction binding effect).

However, the *Local Intelligence* plaintiff is not the original patentee or inventor. *See* '982 Pat. at [72], [73]. Thus, the policy rationales that justify consideration of the prosecution history do not apply to the *Local Intelligence* agreed construction. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) (en banc).

### C. Allegations

In the amended complaint here, plaintiff bolsters its infringement allegations with a claim chart attached to the complaint. Doc. 18 at 6–7; *see also* Doc. 18-2. To show that the accused banking app obtains the current location of the telephone using a

location server, plaintiff points to the app's use of GPS and network-based location services. Doc. 18-2 at 57–59.

## II. Legal standard

Federal Rule of Civil Procedure 8(a)(2) states that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The Federal Circuit reviews procedural issues, including Rule 12(b)(6) motions, according to regional circuit law. *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1259 (Fed. Cir. 2018).

In the Third Circuit, courts conduct a two-part analysis for Rule 12(b)(6) motions. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the court separates the factual and legal elements of a claim, "accept[ing] all of the complaint's well-pleaded facts as true, but . . . disregard[ing] any legal conclusions." *Id.* at 210–11. Second, the court determines whether the alleged facts sufficiently show a "plausible claim for relief." *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Assessing plausibility, the court must "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler*, 578 F.3d at 210. "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

"Prosecution histories constitute public records." *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1008 n.2 (Fed. Cir. 2018); *see also* 37 C.F.R. § 1.11(a); *Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1349 (Fed. Cir. 2004) ("[A patentee's] statement made during prosecution of [a continuation] patent is

- 8 -

relevant to an understanding of the common disclosure in the sibling . . . patents.”).

### III. Prosecution disclaimer

Defendant first argues that the ’982 patentee disavowed the claim interpretation that plaintiff seeks to assert here. Doc. 31 at 7. Claim terms encompass “their ordinary and accustomed meaning” unless there is compelling evidence “to overcome this heavy presumption.” *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999). Additionally, the specification “is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.” *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Despite that heavy presumption, “the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess.” *Phillips*, 415 F.3d at 1316.

The patent’s prosecution history may also be indicative of the proper claim construction. *Markman*, 52 F.3d at 980; *see also Graham v. John Deere Co.*, 383 U.S. 1, 33 (1966) (“[A]n invention is construed not only in the light of the claims, but also with reference to the file wrapper or prosecution history in the Patent Office.”). Although “the prosecution history was created by the patentee in attempting to explain and obtain the patent[,] . . . it often lacks the clarity of the specification and thus is less useful for claim construction purposes.” *Phillips*, 415 F.3d at 1317. “Nonetheless, the prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be.” *Id.*

“[W]here the patentee has unequivocally disavowed a certain meaning to obtain his patent, the doctrine of prosecution disclaimer attaches and narrows the ordinary meaning of the claim congruent with the scope of the surrender.” *Omega Eng’g, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003). Such disavowal

"precludes patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution." *CUPP Computing AS v. Trend Micro Inc.*, 53 F.4th 1376, 1382 (Fed. Cir. 2022).

However, the standard for establishing prosecution disclaimer solely on the prosecution history is "demanding." *Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1045 (Fed. Cir. 2016). The alleged disavowal must "be both clear and unmistakable." *Omega Eng'g*, 334 F.3d at 1325–26. Thus, a finding of prosecution disclaimer is improper where "the alleged disavowal is ambiguous, or even amenable to multiple reasonable interpretations." *Avid Tech.*, 812 F.3d at 1045 (cleaned up).

There is no categorical rule barring the court from considering prosecution disclaimer at the pleading stage. *See UTTO Inc. v. Metrotech Corp.*, 119 F.4th 984, 993 (Fed. Cir. 2024) ("Where claims are construed based on intrinsic evidence alone, a decision on claim construction is not different in kind from the interpretation of other legal standards, which is proper and routine in ruling on a motion under Rule 12(b)(6)."); *see also Amgen Inc. v. Coherus BioScis. Inc.*, 931 F.3d 1154, 1159 (Fed. Cir. 2019) (evaluating prosecution history estoppel at the pleading stage).

Defendant argues that plaintiff's first amended complaint "should be dismissed with prejudice because it alleges infringement based on subject matter expressly disclaimed during prosecution." Doc. 31 at 12. According to defendant, the '982 Patent applicant disclaimed use of GPS and triangulation when prosecuting the parent '067 Patent. *Id.* Considering plaintiff accuses defendant's banking app of infringing Claim 13 with GPS and network-based triangulation techniques (Doc. 18-2 at 35–37), defendant asserts that the complaint fails to assert a claim because it accuses non-infringing, disclaimed activity. *Id.* at 14. In other words, because plaintiff accuses defendant of practicing technology that the patentee conceded was outside the scope of "location server," defendant's alleged activity must be non-infringing as a matter of law. *See id.*

- 10 -

Plaintiff first argues that the court cannot properly consider the prosecution history at the pleading stage because it is not "intrinsic evidence." Doc. 32 at 9–10. This argument is baseless. Prosecution history is a matter of public record, which is properly considered at the motion to dismiss stage. *Data Engine Techs.*, 906 F.3d at 1008 n.2; *Pension Benefit Guar. Corp.*, 998 F.2d at 1196. Further, the patent's intrinsic record undisputedly includes the prosecution history. *Phillips*, 415 F.3d at 1317.

Although plaintiff protests that defendant only attached "[a] thin excerpt from the prosecution history" (Doc. 32 at 10), the court considers "the complete record of the proceedings before the" U.S. Patent and Trademark Office when evaluating prosecution disclaimer. *Phillips*, 415 F.3d at 1317. Despite plaintiff's objection to defendant "submit[ting] only selective portions of the prosecution history," plaintiff fails to direct the court to any patentee prosecution arguments that discredit defendant's disclaimer theory. *See* Doc. 32 at 10–15.

Plaintiff does argue, however, that the examiner rejected the '982 Patent applicant's argument, which plaintiff asserts precludes a finding of disclaimer. *Id.* at 11 (citing *Galderma Lab'ys, L.P. v. Amneal Pharms. LLC*, 806 F. App'x 1007, 1010–11 (Fed. Cir. 2020) (unpublished) ("Because the record makes clear to a skilled artisan that Patent Owner's arguments were rejected, those arguments do not impact claim scope.")).

However, the examiner did not reject the applicant's argument regarding the scope of "location server"; the examiner rejected the applicant's characterization of the prior art. In the office action responding to the applicant's alleged disclaimer, the examiner "respectfully disagree[d]" that the prior art failed to disclose "circuitry operable to connect the telephone . . . to a location server . . . to obtain a location of the telephone." Final rejection, U.S. Pat. Application No. 11/472,613, at 6–7 (filed Nov. 10, 2011). In contrast, the examiner did not contest plaintiff's assertion that "location server" did not include "a positioning system (e.g., global positioning system, triangulation technique) as is

done in [the prior art]." Applicant Arguments/Remarks Made in an Amendment, U.S. Pat. Application No. 11/472,613, at 6 (filed Sep. 23, 2011).

Considering that the examiner disagreed with the applicant's characterization of the prior art and did not disagree with the applicant's characterization of "location server," plaintiff's argument fails. *See Am. Piledriving Equip., Inc. v. Geoquip, Inc.*, 637 F.3d 1324, 1336 (Fed. Cir. 2011) ("Moreover, regardless of whether the examiner agreed with [plaintiff]'s arguments concerning "[location server]," [plaintiff's] statements still inform the proper construction of the term."); *see also Seachange Int'l, Inc. v. C–COR Inc.*, 413 F.3d 1361, 1374 (Fed. Cir. 2005) ("An applicant's argument made during prosecution may lead to a disavowal of claim scope even if the Examiner did not rely on the argument."); *Microsoft Corp. v. Multi–Tech Sys.*, 357 F.3d 1340, 1350 (Fed. Cir. 2004) ("We have stated on numerous occasions that a patentee's statements during prosecution, whether relied on by the examiner or not, are relevant to claim interpretation.").

Next, plaintiff argues that "[p]rosecution history disclaimer is an issue of claim construction that may not be considered at the pleading stage where disputed." Doc. 32 at 13. This argument goes too far. *See UTTO*, 119 F.4th at 993 ("Where claims are construed based on intrinsic evidence alone, a decision on claim construction is not different in kind from the interpretation of other legal standards, which is proper and routine in ruling on a motion under Rule 12(b)(6)."); *see also Amgen*, 931 F.3d at 1159 (evaluating prosecution history estoppel at the pleading stage).

Plaintiff also contests the merits of defendant's disclaimer theory. In plaintiff's view, the alleged disclaimer was "focused on whether location information was obtained 'from a remote location server,' as opposed to being self-contained within the phone." Doc. 32 at 14.[1] Construing all inferences in plaintiff's favor at this stage, the court finds that it is plausible that the applicant

---

[1] Although plaintiff quotes "from a remote location" in its responsive briefing, plaintiff provides no source for this quotation.

distinguished the remote "location server" from the self-contained location tracking in the prior art.

For example, the *Local Intelligence* parties construed "location server" as "A *remote* computer device or program . . . ." Joint Claim Construction & Prehearing Statement, *Loc. Intel.*, No. 2:17-cv-00716 (E.D. Tex. Sep. 6, 2018), Doc. 40 at 1 (emphasis added). Further, the applicant cabined that a "location server" did not include "a positioning system (e.g., global positioning system, triangulation technique) *as is done in* [the '313 Patent]." Applicant Arguments/Remarks Made in an Amendment, U.S. Pat. Application No. 11/472,613, at 6 (filed Sep. 23, 2011) (emphasis added). The specification also discloses at least some use of GPS technology related to the location server. '982 Pat. col. 7 ll. 3–7. Accordingly, plaintiff is free to argue that the applicant did not disclaim all GPS and triangulation techniques, but only disclaimed those described by the '313 Patent. How those techniques overlap with defendant's alleged infringement, though, is a question better resolved at a later stage.

Defendant's motion to dismiss the first amended complaint for prosecution disclaimer is denied.

## IV. Patentable subject matter

Next, defendant argues that the '982 Patent claims unpatentable subject matter. Doc. 31 at 7. The Federal Circuit has "repeatedly recognized [that] it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion." *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1289–90 (Fed. Cir. 2024) (cleaned up). Section 101 eligibility is properly decided on a Rule 12(b)(6) motion "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1355 (Fed. Cir. 2024) (quoting *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018)).

Patentability under § 101 is a "threshold" legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Patent-eligible subject matter is defined as "any new and useful process, machine, manufacture,

- 13 -

or composition of matter, or any new and useful improvement thereof . . . subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has excepted "[l]aws of nature, natural phenomena, and abstract ideas" from patentability under § 101. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (cleaned up).

> Accordingly, in applying the § 101 exception, we must distinguish between patents that claim the building blocks of human ingenuity and those that integrate the building blocks into something more, thereby transforming them into a patent-eligible invention. The former would risk disproportionately tying up the use of the underlying ideas and are therefore ineligible for patent protection. The latter pose no comparable risk of pre-emption, and therefore remain eligible for the monopoly granted under our patent laws.

*Id.* at 217 (cleaned up).

*Alice* established a two-step framework for determining patent-eligibility under § 101. At step one, the court determines whether a claim is "directed to a patent-ineligible concept," such as an abstract idea. *Id.* at 218. If so, the court determines at step two whether the claim "contains an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." *Id.* at 221 (cleaned up). "[I]f a patent's recitation of a computer amounts to a mere instruction to 'implement' an abstract idea 'on a computer,' that addition cannot impart patent eligibility." *Id.* at 223 (cleaned up).

### A. Representative claim

According to defendant, claim 13 is representative of all claims in the '982 Patent. Doc. 31 at 16. "Limiting the analysis of a § 101 challenge to representative claims is proper when the claims at issue are 'substantially similar and linked to the same' ineligible concept." *Mobile Acuity*, 110 F.4th at 1290 (quoting *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017)). To contest a reasonable assertion of

representativeness, the patent owner must present "a non-frivolous argument that the eligibility of the purported representative claim does not fairly represent all claims in the group for purposes of eligibility." *Id*. at 1291. Once this showing is made, "the patent challenger bears the burden to prove either that (i) the representative claim is, in fact, representative . . . ; or (ii) each separate claim . . . is ineligible for patenting." *Id*. Plaintiff provides no counterargument to defendant's representativeness argument. *See generally* Doc. 32.

The two independent claims, claim 13 (a method claim) and Claim 1 (an apparatus claim), of the '982 Patent include the same substantive limitations. *Compare* '982 Pat. col. 9 ll. 5–16 *with id*. col. 8 ll. 25–37; *see also Bancorp Servs., LLC v. Sun Life Assurance Co. of Can. (U.S.)*, 687 F.3d 1266, 1276–77 (Fed. Cir. 2012) (claim format does not affect patent-eligibility analysis). Considering the dependent claims add only conventional steps, claim 13 of the '982 Patent is representative for purposes of § 101 eligibility.

## B. *Alice* step one

To determine whether claims are "directed to patent-ineligible subject matter," such as an abstract idea, the court should "look to the character of the claims as a whole," including the patent's specification. *Broadband iTV, Inc. v. Amazon.com, Inc.*, 113 F.4th 1359, 1367 (Fed. Cir. 2024) (citing *Enfish v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016)). Under *Alice* step one, the inquiry "often turns to the question of what the patent asserts as the claimed advance over the prior art." *Id*. In other words, "whether the claims . . . focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *McRo, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016) (citing *Enfish*, 822 F.3d at 1336).

The '982 Patent is directed to the abstract idea of displaying selected content through a telephone's display based on the telephone's location. "[C]laims directed to nothing more than

collecting, analyzing, and displaying information, even when limited to a particular field of endeavor," are generally abstract. *Cascades Branding Innovation LLC v. Aldi, Inc.*, No. 24-01729, 2025 WL 2731321, at *3 (Fed. Cir. Sep. 25, 2025) (non-precedential) (citing *Elec. Pwr. Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353–54 (Fed. Cir. 2016)).

"The Supreme Court's cases focus on the claims, not the specification, to determine section 101 eligibility." *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 967 F.3d 1285, 1293 (Fed. Cir. 2020). Here, claim 13 discloses "[a] method of refreshing a display panel of a telephone . . . ." '982 Pat. col. 9 l. 5. The telephone comprises "a display panel, a processor, and a datastore comprising at least one function comprising information relating to a current location of the telephone" and connects to a communication network *Id.* ll. 6–10. The method to refresh the telephone's display panel has three steps:

(1) "obtaining a current location of the telephone using a location server,"

(2) "selecting a function from the datastore, and"

(3) "refreshing a screen on the display panel" to depict the communication service(s) the telephone's user commonly utilizes at that location.

*Id.* ll. 12–16.

In essence, the patented method teaches displaying different content on a telephone based on that telephone's location. The Federal Circuit has consistently held such claims to be directed to a patent-ineligible abstract idea. *See*, *e.g.*, *Cascades Branding*, 2025 WL 2731321, at *2 (explaining that "collecting geographic information about the location of a device . . . and displaying that information to the user" is an abstract idea); *Intell. Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015) ("[P]roviding different newspaper inserts based upon the location of the individual . . . is an abstract idea."); *Affinity Labs of Tex., LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1271 (Fed. Cir. 2016) ("[T]ailoring . . . content based on information about the user—

such as where the user lives . . . is an abstract idea . . . ."); *Evolutionary Intel. LLC v. Sprint Nextel Corp.*, 677 F. App'x 679, 680 (Fed. Cir. 2017) (unpublished) (observing that "methods for allowing computers to process data that are dynamically modified based upon external-to-the-device information, such as location" are directed to an abstract idea); *British Telecomms. PLC v. IAC/InterActiveCorp*, 813 F. App'x 584, 587 (Fed. Cir. 2020) (unpublished) ("[T]ailoring the provision of information to a user's characteristics, such as location, is an abstract idea"). This court holds no different.

"[T]he first step in the *Alice* inquiry . . . asks whether the focus of the claims is on the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Enfish*, 822 F.3d at 1335–36. Claim 13 discloses only results-oriented steps employing generic computer components, not an improvement in computer capabilities. *See* '982 Pat. col. 9 ll. 5–16. Much like in *Affinity Labs*, the plaintiff here "makes no claim that it invented any of [the claimed] components or their basic functions, nor does it suggest that those components, at that level of generality, were unknown in the art as of the priority date." 838 F.3d at 1270.

Plaintiff instead argues that patent-eligibility has been analyzed by two courts and neither invalidated the '982 Patent under § 101. Doc. 32 at 15. The court finds neither case persuasive for the present dispute.

First, the Northern District of California analyzed claim 1 of the '067 Patent, the '982 Patent's parent, as representative of both the '067 and '982 Patents. *Loc. Intel., LLC v. HTC Am., Inc.*, No. 5:17-cv-06437, 2018 WL 1697127, at *6 (N.D. Cal. Apr. 6, 2018). There, the court claimed the '067 and '982 Patents solved the same problem as the asserted patent in *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356 (Fed. Cir. 2018), i.e., "limited display space on electronic devices with small screens." *HTC Am.*, 2018 WL 1697127, at *7. As that court reasoned,

because both *Core Wireless* and the '982 Patent solved that problem through "limiting the information" displayed to the user, the '982 Patent should survive a § 101 challenge as the *Core Wireless* patent survived. *Id.*

However, the Federal Circuit described *Core Wireless* differently in a later case. *Broadband iTV* explained that the *Core Wireless* patent claimed "features of an *improved* user interface." 113 F.4th at 1368 (emphasis added). In contrast, U.S. Patent No. 10,028,026 failed step one in *Broadband iTV* for claiming "a results-oriented abstract idea." *Id.* at 1368–69. Disagreeing with the reasoning provided by the Northern District of California, the Federal Circuit made clear that "the fact that the claims involve a user interface does not automatically put the claims in the same category as *Core Wireless*." *Id.* at 1368.

The '982 Patent describes the problem, "[d]ue to the many available services [on a phone], the user often has to navigate through many menu displays in order to find a desired service," and then provides a solution: "automatically display services that are likely to be used at . . . a given location." '982 Pat. col. 1 ll. 30–32, col. 2 ll. 5–6. Under current precedent, this solution fails step one. *See Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017) ("[M]ere automation of manual processes using generic computers does not constitute a patentable improvement in computer technology."). Plaintiff argues that prior to the '982 Patent, users experienced the "inefficiency of 'navigat[ing] painstakingly through the menu in order to find the right service.'" Doc. 32 at 20 (quoting '982 Pat. col. 1 ll. 50–51). Even so, "'claiming the improved speed or efficiency inherent with applying the abstract idea on a computer' [is] insufficient to render the claims patent eligible as an improvement to computer functionality." *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1364 (Fed. Cir. 2020) (quoting *Intell. Ventures I*, 792 F.3d at 1367).

In the second case, a United States Magistrate Judge in the Western District of Texas issued a report recommending denial of

a motion to dismiss "without prejudice to raising patent ineligibility at the summary judgment stage." *Lab Tech. LLC v. USAA All. Servs. LLC*, No. 7:25-cv-00173, 2026 WL 1630447, at *3 (W.D. Tex. Jan. 30, 2026). Before that report could be accepted or rejected, the parties stipulated to dismissal under Federal Rule of Civil Procedure 41(a)(1)(A)(ii). *Lab Tech.*, No. 7:25-cv-00173 (W.D. Tex. Feb. 27, 2026), Doc. 47. The report acknowledged the Northern District of California's ruling and held "that the most prudent approach for a § 101 invalidity analysis is to conduct it on a full record." *USAA All.*, 2026 WL 1630447, at *3. In other words, the § 101 analysis was not resolved in plaintiff's favor—it was deferred to a later stage.

Deferral is unnecessary here because further factual development is unnecessary. The '982 Patent itself proves it claims an abstract idea. *See Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) ("[A] court need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit, such as the claims and the patent specification." (cleaned up)).

### C. *Alice* step two

At *Alice* step two, the court considers whether the claims contain an "inventive concept" that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 573 U.S. at 217–18 (cleaned up). "A claim that recites an abstract idea must include additional features to ensure that the claim is more than a drafting effort designed to monopolize the abstract idea." *Id.* at 221 (cleaned up).

For example, in *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, "methods for determining metabolite levels were already 'well known in the art,' and the process at issue amounted to 'nothing significantly more than an instruction to doctors to apply the applicable laws when treating their patients.'" *Id.* at 221–22 (quoting *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 79 (2012)). So too in *Alice*, where "the claims at issue

amount[ed] to nothing significantly more than an instruction to apply the abstract idea of intermediated settlement using some unspecified, generic computer." *Id.* at 225–26 (cleaned up).

Plaintiff, citing only its amended complaint, argues that "the inventive concepts captured in Claim 13 were not only unconventional, but were not previously known in the prior art." Doc. 32 at 22 (cleaned up). The '982 specification disagrees. The disclosed "telephone" is not improved; it may be any of "a personal mobile phone," "an office telephone", or "a hotel guest mobile phone." '982 Pat. col. 7 l. 55–col. 8 l. 7. The "[d]isplay panel . . . may have any suitable dimensions" and "is adapted to display items including text and/or graphics." *Id.* col. 4 ll. 23–25.

The telephone's components provide no technological advance either. The "function selector" is described as "a program or programming logic that selects a function . . . based on information, such as . . . location." *Id.* col. 6 ll. 6–9. The specification adds that "the function selector may include a processor" and then never further describes the "processor." *Id.* col. 2 ll. 54–55. The "[d]atastore . . . may include a hard disk, a memory, a flash memory and/or a database or other suitable storage means." *Id.* col. 6 ll. 31–33. The "communication network" described could be "a telephone network," "the Internet," "a wired network," or other known ways of connecting two devices. *Id.* col. 4 ll. 3–21. Lastly, the specification teaches "a wide range of services can be considered communication services." *Id.* col. 3 l. 67–col. 4 l. 1.

This inventory of generic computer components does not "amount[] to significantly more than a patent upon the ineligible concept itself." *Alice*, 573 U.S. at 217–18 (cleaned up); *see also Customedia Techs.*, 951 F.3d at 1366 ("Such generic and functional hardware is insufficient to render eligible claims directed to an abstract idea."); *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290–91 (Fed. Cir. 2018) ("If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea.").

Plaintiff contends that there is "no basis for asserting that the claimed technology was conventional." Doc. 32 at 22. Yet, plaintiff fails to cite a portion of the specification teaching otherwise. Instead, plaintiff relies on "specific factual allegations to the contrary" in its amended complaint. *Id.* The court disregards conclusory factual allegations that contradict the patent's specification. *IBM Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1379 (Fed. Cir. 2022) ("[T]he district court need not accept a patent owner's conclusory allegations of inventiveness."); *see also Cellspin Soft Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317 (Fed. Cir. 2019) ("[W]e do not . . . say that any allegation about inventiveness, wholly divorced from the claims or the specification, defeats a motion to dismiss . . . .").

The '982 Patent "merely [claims] the abstract idea of filtering content . . . on a set of generic computer components." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016); *see also Intell. Ventures I*, 792 F.3d at 1369–71 (observing that filtering and displaying content based on location via generic computer components "claim[s] an abstract idea and do[es] not otherwise claim an inventive concept"). Accordingly, the '982 Patent is invalid for claiming ineligible subject matter under 35 U.S.C. § 101.

## V. Conclusion

Alternatively to its above arguments, plaintiff seeks leave to amend to "plead additional facts addressing the specific technological problem in pre-existing telephone user interfaces that the '982 Patent solved; industry conventions at the time of invention regarding mobile telephone user interfaces and location-aware service presentation; and further detail demonstrating that the methods of Claim 13 were not conventional." Doc. 32 at 23.

Plaintiff has already amended its complaint once, presumably putting forth its best possible pleading. *See* Docs. 1, 18. Further, given that the court's holding of invalidity is based on the '982 Patent's claims and specification, amendment would be futile. A patent, unlike a complaint, cannot be amended by repleading. The court will not consider allegations that contradict the claims or

the specification of the asserted patents. *See Secured Mail*, 873 F.3d at 913; *see also Cascades Branding*, 2025 WL 2731321, at *4 ("No amount of new allegations or additional evidence could change . . . the patent's specification.").

Thus, defendant's motion to dismiss under Rule 12(b)(6) is granted as to its argument that the '982 Patent is invalid under 35 U.S.C. § 101. Plaintiff's case is dismissed with prejudice. Any pending motions are denied as moot.

*So ordered by the court on July 23, 2026.*

J. CAMPBELL BARKER
United States District Judge